The next matter on our calendar is Frederick Abrams v. The Connecticut Department of Public Safety. Mr. Abrams, you may take the podium. You go first. May it please the court, my name is Frederick M. Abrams. I am the appellant in this appeal. Although I was represented by counsel at trial, I am prosecuting this appeal on my own. You came before this court before, and this court sent it back for trial on the issue of race discrimination, correct? That's correct, Your Honor. And then the jury found against you on that issue? Yes, Your Honor. And that was the only issue remaining after the first round of this case? Yes, Your Honor. Okay. I'm here today to petition the court, the Honorable Court, to reverse the judgment entered after trial in district court that resulted in the defendant's verdict. The appeal centers on five simple points. I know you're pro se, but you must know that since this is a jury verdict you're appealing, you have to tell us how the jury got it wrong, whether the judge mischarged the jury or the jury misapprehended the facts or the law. That is the only thing we're interested in now. I understand, Your Honor. Okay, continue. This appeal center on five simple points, which taken together resulted in an irreparable harm to my case against the Connecticut Department of Public Safety. The importance of report writing, the judge- Report writing? No, Your Honor. What I am objecting to is that the comment made by the judge about report writing. The judge in his opening statement stated that there were a court reporter and a clerk if the jury needed questions to be answered. By the judge in the middle of the trial commenting on report writing, I feel was an error. Or the report of the court proceedings. No, report writing, Your Honor. In the report writing, there's two parts to report writing. Two equal, I mean three equal parts. And I know that in these, in report writing, it leaves other parts that are equally important. What the judge's comment did was elevated the defense case and tipped the scales of justice in favor of the defense. My next part is that the judge abused his powers in not allowing the testimony of Andrew Matthews. You have in your brief, you'll have to remind me about this, I read it a while ago. What exactly the judge said about report writing? Because my memory, obviously, is not the same as yours. It seemed to me he was only talking about the purpose of the court stenographer. If you can't find it, I'll find it later. I don't want to take your time on that. What I am here for the appeal is because of the comment that was made to the jury. And my feeling is that the jury could have independently made their own decision during deliberation. By the judge making this comment, the field was prejudiced to the case. So I have the language because the state included it in their brief. He says, before I turn to those instructions, let me explain, and he's talking about Terry Glenn. And then he says, you might want this to be a good experience for you, if there's anything we can do to assist you. You saw Darlene Warner, our official court reporter yesterday at jury selection. Darlene will be with us throughout the trial, making a record of everything that takes place during the trial, and you will see her doing that. What does that have to do with report writing? Your Honor, I'm not objecting to the comments that you're making that's in the- So what are the comments you're objecting to? That the judge asked, lectured the jury on the importance of report writing. So it's not in the introduction? No, it's not the introduction, Your Honor, no. It's an additional comment that was made in the middle of the trial. And will I find them in your brief? Yes, you will, Your Honor. Okay, you don't happen to know the page, but I'll find them then. The next error is that the judge abuses power in allowing the testimony of, not allowing the testimony of Andrew Matthews. The plaintiff had asked questions, had additional questions to ask Andy Matthews, who was a witness, and the jury was not allowed to hear this. Matthews reported during testimony that he could not answer questions because of attorney-client privileges. Attorney Matthews was not my attorney, and as a plaintiff, I waver these rights. On record to have Andrew Matthews talk or freely talk during the trial. The judge abused his power by limiting his testimony. My question is that, if being the client and you waver your rights to attorney-client privileges, and you don't allow the witness to speak freely, then who rights really is it if it's under . . . Your time has expired. You've reserved two minutes for . . . Yes, I have, Your Honor. While you're sitting down, if you could find the exact words, because I don't think it's in your brief exactly, where the judge informed the jury about the importance of report writing, I would be grateful. I thought it was merely the introduction of the court reporter, so I'd be grateful for that when you retake the podium. Now we'll hear . . . It's on page 16 of this brief. 16? Yes, and it's exactly the wording that you quoted. At least that's what's on page 16. But 16 just says that he did it. It doesn't have the language, does it? No, it does, but it's exactly what you read before. Darlene will be with us throughout the trial making a record of everything that takes place during the trial, and you will see her doing that. Right, but Mr. Abrams alleges additionally that Judge Chatney, without any questions from the jury, provided instructions on the value of report writing, and I can't find those words. So if you can find them, I'd be grateful. Now we'll hear from the State of Connecticut.  Thank you, Your Honors. Are there words about report writing that the judge gave? I didn't notice. I limited myself through reviewing the brief that was filed and trying to address the points that were raised in the brief. You were not the trial counsel? I was trial counsel. So you heard Judge Chatney, did he ever, in addition to introducing Darlene Warner, say to the jury, this will demonstrate the importance or the value of good writing of reports? No, Your Honor. Judge Chatney may have asked questions of witnesses as follow-up questions. The voir dire? No, of witnesses? Yes, the trial court may have asked additional questions of the witnesses, but nothing that stands to mind in terms of a lecture to the jury about the importance of report writing, no. Thank you. Thank you, Your Honors. Your Honors, with regard to Mr. Matthews' testimony, again, I was trial counsel. I had absolutely no recollection of his testimony being limited by an attorney-client privilege. I went back and reviewed the transcript of Mr. Matthews' testimony to make sure I wasn't missing anything. And his trial testimony was not limited because of an attorney-client privilege. And the transcript will bear that out. With regard to the other points, unless the court has any questions for me with regard to this appeal, we will rest on our brief. I have none. Okay, Mr. Abrams, you can retake the podium. You have two minutes. I'm sorry I took some of your time by asking questions. This is all for you, the two minutes. Your Honor, prior to the start of the trial, the judge, plaintiff, and the defense had a pre-trial hearing. During this hearing, the name Ryan Luther was discussed as a possible witness. The judge denied the defendant's request to add Ryan Luther as a witness. And any information regarding Ryan Luther and any information after 2009, the court decision was not to allow it in court. During court on several occasions, the defendant, John Turner, gave a wrong answer and he inserted Ryan Luther's name. What bothers me about this is the defense attorney and John Turner ignored the judge's pre-trial order after being warned several times during trial not to make this comment. This comment influenced the jury decision and may have tipped the scales of justice in the defense's favor. The plaintiff learned one week, and this is regarding witnesses, prior to the trial that the judge allowed five defense witnesses to testify. The plaintiff's attorney objected to the judge's decision and added these five witnesses. Under the law versus case doctrine, because this case was here before, it was decided on a previous occasion that these witnesses will not be added to the case. By adding this to the case a week before the case did not give us time to depose these witnesses. You knew who they were from well before the start of the trial? No, a week before. Well, they were always listed in your complaint. Yes, but it was stricken from the first trial. So what I'm saying is that if the judge wouldn't allow it in the first trial, we came to appeal. And then the third trial that we have, he allowed it a week before the trial. Was there any agreement not to allow it? I thought you just said that, but I didn't find that. Was there any agreement not to allow- Not to allow them in the third trial. It was in the first trial. In the first trial they were not- In the appeal, correct. In the second trial? In the second trial it was allowed a week before the trial began. But there was no agreement not to allow them. It's just that they hadn't done it in the first trial, right? In the first trial, it was no agreement. They denied the agreement. Okay. Okay. And I am going, if there's not any other questions, I'm going to rest my case and leave all the information that's in the brief to stand on its own. Thank you. Thank you both for reserved judgment. I will ask the court to adjourn court. Court is adjourned.